MEISER, Respondent, v. AETNA CASUALTY & SURETY COMPANY, Appellant.

*October 5—November 3, 1959.*

234

For the appellant there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Edmund W. Powell* and *Anton Motz* of counsel, all of Milwaukee, and oral argument by *Mr. Motz.*

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *Clifford C. Kasdorf* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf.*

MARTIN, C. J. Appellant contends that when the respondent cleaned the plaster off the windows, the windows were property in his care, custody, or control or property as to which he was exercising physical control.

Appellant argues that the exclusion phrase as to "care, custody, and control" is clear and unambiguous, citing first

*International Derrick & Equipment Co. v. Buxbaum* (3d Cir. 1957), 240 Fed. (2d) 536. That was an action by the plaintiff derrick company, which had contracted to procure and install a metal tower and antenna mast for a broadcasting company, for loss sustained when equipment of the defendant, who had contracted to raise the mast, bent and caused the mast to fall and be damaged beyond repair. Following judgment against the defendant the derrick company sued defendant's insurer under a liability policy which excluded from coverage property in the care, custody, or control of the insured. A reading of the case discloses that the court resorted to cases which "clarified" the care, custody, or control exclusion phrase, holding as follows (p. 538):

"Where the property damaged is merely incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable. [Citing cases.] However, where the property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the 'care, custody, or control' of the insured."

The second case relied upon by appellant is *Maryland Casualty Co. v. Holmsgaard* (1956), 10 Ill. App. (2d) 1, 133 N. E. (2d) 910. There the plaintiff insurance company brought suit for declaratory judgment for construction of a policy issued to one of the defendants, Grove, who operated a machine shop. Defendant Holmsgaard left his automobile in the Grove shop to have a trailer hitch welded beneath the car, and during the welding operation the automobile was destroyed by fire. The insurance policy excluded coverage of property in the care, custody, or control of the insured, Grove. The court, while holding there was no ambiguity in the language of the exclusion, pointed out that it made no difference whether it was considered that the car was delivered into the possession of Grove as bailee for hire

or that the car was in Grove's care, custody, and control, because the facts were undisputed that Grove had possession of the car, had dominion over it, managed and controlled it, and was in the act of working on it when the damage occurred. The court, however, emphasized the aspect of bailment for compensation, calling attention to the rule that under such circumstances the bailee's possession of the property is such as would entitle him to exclude the possession of others, even that of the bailor.

The third case cited by appellant on this point is *Hardware Mut. Casualty Co. v. Mason-Moore-Tracy* (2d Cir. 1952), 194 Fed. (2d) 173, another declaratory-judgment suit involving a manufacturer's and contractor's liability policy which was issued to the defendant in its business of moving machinery. In the process of removing heavy machinery from premises occupied by one Stewart, defendant suspended the machinery by a rope attached to the top of an elevator shaft, and during the course of the operations the rope broke and the elevator was damaged. The court held that defendant was "using" the elevator at the time it fell and that the exclusion clause requiring that the insured be in "control" of the damaged property was applicable, whether defendant's use was exclusive or in conjunction with others. The rationale of the decision clearly indicates that the court was construing the language of the exclusion clause.

Respondent calls attention to *Boswell v. Travelers Indemnity Co.* (1956), 38 N. J. Super. 599, 120 Atl. (2d) 250, 254, where the same exclusion clause was contained in a manufacturer's and contractor's liability policy issued by the defendant to the plaintiff, a boiler-repair company. Plaintiff contracted with a realty corporation, the general contractor, to replace tubes in certain heat exchange units connected to a boiler. During the course of the boiler repairs plaintiff's employees mistakenly ran the water through the outer shell of the heating units and one of the shells

cracked. In discussing the exclusion phrase, "care, custody, or control," the New Jersey court stated (p. 607):

"Such words are inherently ambiguous, for they are words of art which have been the focus of considerable judicial construction."

The facts in the instant case show that appellant was uncertain as to the application of the exclusion clause in the circumstances here. When respondent first reported the loss, appellant's agent was not familiar with the type of coverage provided by respondent's policy but thought the loss would be covered and advised respondent to file a claim. After discussing the matter with the appellant, the agent called respondent and told him he had coverage. When Ferch made claim of the respondent for the loss then estimated to be about $2,000, respondent discussed the claim with an investigator of the insurance company, a lawyer of several years' standing, but it was not until a month later that appellant notified the respondent that the loss was excluded from coverage. These facts indicate that the appellant, as well as its agent, was not at any time sure of the construction which should be placed upon the exclusion clause and are entirely inconsistent with appellant's present contention that the phrase is unambiguous.

The rule, as set forth in the *Boswell Case, supra* (p. 606), is:

"Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity."

In our opinion the rule referred to in the *International Derrick Case, supra,* applies in the instant case—where the property damaged is merely incidental to the property upon which the work is being performed, the exclusion is not applicable.

Mr. Ferch of Home Engineering Company, the general contractor, testified that respondent's subcontract was to do the plastering of walls and ceilings in the house, that he had nothing to do with any of the windows. Respondent was not permitted to do any work with the windows; he could not remove any of the windows; his removal of the plaster did not involve cleaning the entire windows but only those areas where plaster had splattered.

Ferch himself, as general contractor, had supervision of all the work on the premises; he was on the job several times a day during the time the house was under construction; it was his obligation to take care of the premises; it was he who was responsible for the general cleaning up, during the course of which he engaged window washers.

The evidence is undisputed that respondent's contract was to do the plastering, nothing more. It is obvious that at the time the windows were splattered they were in no sense in the respondent's care, custody, or control. The testimony discloses that such splattering frequently occurs during plastering operations, especially when the ceiling plaster is being applied, but it is of an accidental and incidental nature, being the result of plaster dropping on the scaffold and splashing. Respondent's removal of the plaster on the windows was a matter of cleaning up, which cannot be considered an essential part of the plastering operation. Further, respondent's testimony that he removed the plaster at the request of the general contractor, is not denied in the record.

. Respondent's work was confined to walls and ceilings; he had no care, custody, or control of any other part of the building. The fact that some plaster was inadvertently splashed or fell on the windows did not give him care, custody, or control of the windows. He was requested by the general contractor to remove the plaster. It must be

held that the respondent did not have care, custody, or control of the windows at the time they were damaged and that the exclusion clause is not applicable.

The policy exclusion is meant to apply to the essential work being done by the insured, that is, damage to the ceilings and walls. Such damage is excluded from coverage by the clause in question, but not damage to property with which respondent has no connection under his subcontract.

One further question is presented. The trial court awarded to the respondent attorneys fees of $295, finding said sum reasonable compensation "for all work done by the attorneys for plaintiff in defending against the claim for loss, the adjustment of said loss, the pretrial work, the trial work, and the statutory attorney fees." Appellant argues that respondent is limited to the attorney fees fixed by statute.

When respondent learned that the windows were damaged and would have to be replaced he was advised that the estimated cost would be $2,000 and that the general contractor was making claim against him for said cost. He notified the appellant and was first told that the loss would be covered under the policy. Later, appellant denied the claim. Thus, respondent was obliged to engage the services of attorneys to protect his interests, and the trial court found that negotiations for settlement of the loss were undertaken by said attorneys and this action was commenced to recover damages of the appellant by reason of its breach of contract in failing to investigate, adjust, and defend the respondent against the loss. Negotiations with the general contractor resulted in the replacement being done at cost, the damages being reduced to $885. Appellant takes no exception to the facts as found by the court. Under all the circumstances the principle to be applied, as stated in 49 A. L. R. (2d) 727, is:

"It appears well settled that an insurer who wrongfully refuses to defend an action against the insured, on the

ground that the claim upon which the action was based was not within the coverage of the policy, is liable for reasonable attorneys' fees incurred by the insured in the defense of the action brought against him."

The reasonableness of the fees was a matter for the trial court to decide and, as far as we can see, the amount is reasonable. As pointed out above, it was because of appellant's refusal to accept its liability under the policy that respondent was put to the expense of retaining his own attorneys and, the fees being reasonable, they are a legitimate charge against the appellant.

*By the Court.*—Judgment affirmed.